UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBIN B.,[1] | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | No. 1:19-cv-04710-JMS-DML |
| | ) | |
| ANDREW M. SAUL, Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| *Defendant.* | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Robin B. filed for disability benefits with the Social Security Administration ("SSA") on August 9, 2016, alleging a disability onset date of April 5, 2011, which was later amended to January 1, 2016.  [Filing No. 6-2 at 27.]  Her application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge ("ALJ") Edward P. Studzinski.  [Filing No. 6-2 at 25.]  The ALJ issued a decision denying Robin H. benefits, and the Social Security Appeals Council upheld the ALJ's decision and denied Robin B.'s request for review.  [Filing No. 6-2 at 26; Filing No. 6-2 at 2.]  Robin B. then filed this civil action, asking the Court to review the denial of benefits.  [Filing No. 10.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). As explained by the Supreme Court,

> The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months.

*Id.* at 217 (quotations omitted).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists to support the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). However, "[i]f a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the [Social Security Administration] to establish that the claimant is capable of performing work in the national economy." *Id.*

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND[2]

Robin B. filed for disability benefits with the SSA on August 9, 2016, alleging a disability onset date of April 5, 2011, which was later amended to January 1, 2016.  [Filing No. 6-2 at 27.] Her alleged disability involves degenerative disc disease, left knee degenerative joint disease, kyphosis, vitamin B-12 deficiency anemia, fibromyalgia, migraine headaches, obesity, depression, and anxiety.  [Filing No. 6-2 at 28.]  Robin B.'s date last insured is December 31, 2021.  [Filing No. 6-2 at 27.]

At the time of the amended onset date, Robin B. was 46 years old.  [Filing No. 6-2 at 27.] Robin B. has a high school education and has past relevant work as a school bus driver for special needs and elementary school children.  [Filing No. 6-2 at 27.]  Robin B. lives with her husband and has been married for twenty-one years.  [Filing No. 6-2 at 58.]The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Robin B. was not under a disability at any time between the original onset date, April 5, 2011, through the date of the ALJ's decision on December 4, 2018.  [Filing No. 6-2 at 26.]  Specifically, the ALJ found the following:

- At Step One, Robin B. has not engaged in substantial gainful activity[3] during the period of her amended alleged onset date through her date of last insured.  [Filing No. 6-2 at 27.]

- At Step Two, Robin B. had the following severe impairments: degenerative disc disease, obesity, depression, and anxiety.  [Filing No. 6-2 at 28.]

- At Step Three, Robin B.'s impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404,

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

Subpart P, Appendix 1, (20 CFR 404.1520(d), 404.1525, and 404.1526). [Filing No. 6-2 at 29.]

- After Step Three but before Step Four, Robin B. has the following RFC:

  > lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in the total amount of time she is able to sit, stand or walk throughout an 8-hour workday. The claimant needs to alternate her position between sitting, standing, and walking for no more than five minutes out of every hour. While doing so, she would not need to be off task. The claimant can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance, crouch, and crawl, but she can never climb ladders, ropes, or scaffolds. The claimant can reach in all directions and can perform fine and gross manipulation frequently, but not constantly. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water. She should avoid concentrated exposure to unguarded hazardous machinery. The claimant is further limited to simple, routine tasks. She is further precluded from work involving direct public service, in person or over the phone, although the claimant can tolerate brief and superficial interaction with the public, which is incidental to her primary job duties. She is unable to work in crowded, hectic environments. The claimant can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks. [Filing No. 6-2 at 31.]

- At Step Four, Robin B. was unable to perform any past relevant work through the date last insured. [Filing No. 6-2 at 37.]

- At Step Five, considering Robin B.'s age, education, work experience, and RFC, there are jobs that exist in sufficient numbers in the national economy that she can perform, such as mail clerk, housekeeper, and final assembler. [Filing No. 6-2 at 38.]

The Appeals Council denied Robin B.'s request for review of the ALJ's decision, therefore, the ALJ's decision became the Agency's final decision for purposes of judicial review. [Filing No. 6-2 at 2-4.] Robin B. then filed this civil action asking this Court to review her denial of benefits. [Filing No. 1.]

### III.

#### DISCUSSION

Robin B. challenges the ALJ's decision on the following grounds: (1) the ALJ failed to consider or rejected several conditions individually or in combination as severe; (2) the ALJ failed to consider all relevant listings and medical equivalence; (3) the ALJ failed to accommodate conditions in the RFC by rejecting numerous treating physicians' opinions and third-parties' statements; and (4) the ALJ failed to provide a complete picture of Robin B.'s functional capacity to the vocational expert ("VE").  The Court will consider each in turn to the extent necessary to resolve the appeal.

### A.  Whether the ALJ Failed to Consider Several Conditions at Step Two

First, Robin B. argues that the ALJ erred at Step Two by failing to consider critical evidence of her disability, including: (1) degenerative joint disease in her left knee; (2) kyphosis as a condition separate from her degenerative disc disease; and (3) anemia causing severe fatigue from chronic malabsorption due to B-12 deficiency.  [Filing No. 10 at 19.]  Second, Robin B. alleges that the ALJ erroneously rejected her migraine headaches and fibromyalgia as non-severe by not providing an accurate and logical bridge between the evidence and his findings.  [Filing No. 10 at 17-23.]  Third, she contends that the ALJ failed to consider the combined effect of her symptoms to determine if they would rise to the level of a severe impairment.  [Filing No. 10 at 22.]  Robin B. argues that the ALJ cannot rely on the state agency opinions to salvage these errors because the opinions were outdated, incomplete, and selectively reviewed.  [Filing No. 10 at 18.]  Robin B. maintains that these Step Two errors warrant remand.

In response, the Commissioner argues that Robin B. did not meet her burden of showing a reversible error because the ALJ considered the objective, opinion, and subjective evidence regarding all of her alleged impairments.  [Filing No. 13 at 8-9.]  The Commissioner asserts that

because the ALJ found at least one severe impairment and continued on to consider severe and non-severe impairments in reaching an RFC, there was no reversible error at Step Two. [Filing No. 13 at 8.] The Commissioner contends that the ALJ considered Robin B.'s migraines, fibromyalgia, left knee condition, kyphosis, and vitamin B-12 deficiency and determined that they caused no more than minimal vocationally relevant limitations. [Filing No. 13 at 8-9.]

In her reply, Robin B. contends that the ALJ relied on his own interpretation of objective medical evidence—without an expert review of the full updated record—to conclude that the record was inconsistent with an assessment of disability. [Filing No. 14 at 4.] Robin B. argues that she met her burden of showing that the ALJ clearly erred by not considering her left knee degenerative joint disease, kyphosis, vitamin B-12 deficiency anemia, migraines, and fibromyalgia combined with her other severe conditions. [Filing No. 14 at 5-7.] Robin B. contends that the ALJ improperly highlighted evidence suggesting normal functioning to minimize the severity of her combined impairments. [Filing No. 14 at 6.]

The Court addresses each issue raised by Robin B. in turn.

> 1. *Whether the ALJ Considered Critical Evidence of Left Knee Degenerative Joint Disease, Kyphosis, and Vitamin B-12 Deficiency Anemia*

The ALJ considered Robin B.'s left knee degenerative joint disease, kyphosis, and vitamin B-12 deficiency anemia, and concluded—based on substantial evidence—that they were not severe or not medically determinable. [Filing No. 6-2 at 25-37.] The ALJ considered Robin B.'s left knee numbness and difficulty bearing weight in the RFC. [Filing No. 6-2 at 32.] He also considered Robin B.'s "back impairments" and "disorders of the spine," noting no "compromise of a nerve root or the spinal cord" and no lumbar spinal stenosis. [Filing No. 6-2 at 28.] The ALJ considered peripheral neuropathy, secondary to Vitamin B-12 deficiency, with complaints of "tingling in her hands and feet, but no evidence of neurological deficits." [Filing No. 6-2 at 28.]

Although vitamin B-12 deficiency anemia and fatigue from chronic malabsorption are not discussed at Step Two, [Filing No. 10 at 19], the ALJ considered Robin B.'s "ability to persist or maintain pace" in the sequential analysis and found a moderate limitation. [Filing No. 6-2 at 30.] Robin B. suggests that the conflation of Steps Two and Three is clear error warranting remand, [Filing No. 14 at 4-5], but here, the ALJ's consideration of vitamin-12 deficiency at Step Two and ability to persist or maintain pace in the sequential analysis was sufficient and, at the most, would amount to harmless error. *Loftis v. Berryhill*, 2017 WL 2311214, at *2 n.1 (N.D. Ill. May 26, 2017) (citing *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015) ("[A]ny error that an ALJ commits at step two is harmless as long as she goes on to consider the combined impact of a claimant's severe and non-severe impairments.")). Thus, the Court finds that the ALJ's consideration of Robin B.'s medical conditions was sufficient.

## 2. *Whether the ALJ Considered Critical Evidence of Migraines and Fibromyalgia*

The Court agrees with the Commissioner that the ALJ adequately considered the evidence of Robin B.'s migraines and fibromyalgia. The ALJ considered medical evidence that documented a history of migraine headaches with aura treated by Dr. Lawrence McMillion. [Filing No. 6-2 at 28.] He noted that Robin B. reported weekly migraine headaches with photophobia, phonophobia, nausea, and blurred vision prior to treatment in June 2016, with medication reducing the frequency to 1-2 per year. [Filing No. 6-2 at 28.] The ALJ also considered that Robin B. reported an increase in the frequency of her migraines in December 2016, resulting in Dr. McMillion adjusting her medications. [Filing No. 6-2 at 28.]

Regarding Robin B.'s history of fibromyalgia, the ALJ considered treatment notes by Dr. John McLimore in February and October of 2016 that referenced "diffuse tender points." [Filing No. 6-2 at 28.] The ALJ also noted that there was no rheumatology workup or diagnosis, and he

reasonably concluded that this omission, combined with the lack of detail from Dr. McLimore's notes about the specific number of diffuse tender points, made this a non-medically determinable impairment.  [Filing No. 6-2 at 28; *see* SSR 12-2p, 2012 WL 3104869, at *2-*3 (instructing that criteria for diagnosing fibromyalgia includes "[a]t least 11 positive tender points on physical exam. . . . The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist").]  The Court finds that the ALJ used the proper standard, and he articulated an accurate and logical bridge to communicate his reasoning that Robin B.'s fibromyalgia and migraines were not severe impairments.

### 3.   *Whether the ALJ Ignored the Combination of Robin B.'s Conditions*

At Step Two, the ALJ "must determine whether or not the claimant has a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'"  20 CFR 404.1520(c).  Robin B. argues that the ALJ failed to consider her non-severe conditions in combination with her severe impairments in his disability determination.  [Filing No. 10 at 22.] An ALJ's decision must be based on consideration of all relevant evidence and his conclusions must be stated in a manner sufficient to permit an informed review.  *Garfield v. Schweiker,* 732 F.2d 605, 610 (7th Cir. 1984).  Here, the ALJ at least minimally articulated that he considered the combination of Robin B.'s symptoms and conditions.  The ALJ considered obesity as an "aggravating factor to any other severe impairment that in combination would meet a listing," but he found that the "medical evidence of record did not indicate her obesity contributed to any other severe impairment to meet a listing in 20 CFR 404, Subpart P, Appendix 1."  [Filing No. 6-2 at 29.]  The ALJ also considered Robin B.'s mental impairments, both "singly and in combination" and found they did not meet or medically equal a listing.  [Filing No. 6-2 at 29.]  The ALJ further considered all of Robin B.'s symptoms in combination when deciding whether the paragraph B

and C criteria in the Steps Two and Three sequential evaluation process were satisfied.  [Filing No. 6-2 at 30-31.]  For paragraph B, the ALJ found moderate—but not marked—limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and, (4) adapting and managing oneself.  [Filing No. 6-2 at 29-30.]  In considering "paragraph C" criteria, the ALJ found that the record did not reflect evidence of: (1) repeated episodes of decompensation; (2) a residual disease process indicating that minimal changes in the environment would predict decompensation; or (3) a history of one or more years of inability to function outside of a supportive living arrangement.  [Filing No. 6-2 at 30-31.]  Here, the ALJ's consideration of Robin B.'s individual conditions at Step Two and his consideration of paragraphs B and C criteria in the sequential analysis satisfied his duty of minimally articulating that the combination of Robin B's conditions did not meet or medically equal a listing.  *See Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985) ("We examine the [ALJ's] opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions."); *see also Davis v. Califano*, 603 F.2d 618, 625 (7th Cir. 1979).

The Court finds that the ALJ did not reversibly err at Step Two.  In light of the available evidence, the ALJ reasonably determined that: (1) Robin B.'s degenerative disc disease, obesity, depression, and anxiety were severe, and (2) her degenerative joint disease, kyphosis, vitamin B-12 deficiency anemia, neuropathy, and other documented conditions were not severe.

### B.  Whether the ALJ Erred at Step Three

Robin B. argues that the ALJ's Step Three determination is fundamentally flawed because it failed to address two applicable Listings and improperly considered medical equivalence.  [Filing No. 10 at 24.]   She asserts that although the ALJ considered Listings related to her

degenerative disc disease, depression, and anxiety, he failed to consider or erroneously rejected her left knee degenerative joint disease, vitamin B-12 deficiency anemia, and fibromyalgia. [Filing No. 10 at 24.] She contends that this failing constitutes an error that, when combined with other errors, warrants remand. [Filing No. 10 at 24.] Robin B. also asserts that the ALJ failed to analyze all of the evidence and improperly relied on his own lay opinions to fill in gaps in the record when he concluded that her fibromyalgia diagnosis did not medically equal a listing. [Filing No. 10 at 24-25.] She argues that his analysis was merely perfunctory. [Filing No. 10 at 25.]

In response, the Commissioner argues that the ALJ committed no reversible error at Step Three because there was substantial evidence to support his determinations. [Filing No. 13 at 12.] The Commissioner maintains that Robin B. did not meet her burden of showing that her impairments met another Listing. [Filing No. 13 at 12-15.] Both parties agree that the ALJ considered whether Robin B.'s back condition satisfied Listing 1.04, and whether her mental impairments satisfied Listings 12.04 or 12.06. [Filing No. 6-2 at 29-31.] Robin B. asserts that the ALJ should have considered whether her left knee condition and vitamin B-12 deficiency anemia satisfied Listings 1.02 and 7.18, but the Commissioner contends that there was no basis in the record to show that she could satisfy either Listing. [Filing No. 13 at 12-13.] Addressing Robin B.'s argument that the ALJ failed to consider the medical equivalence of her fibromyalgia, the Commissioner asserts it was not necessary for the ALJ to cite SSR 12-2p by name to adequately apply the law to the facts of her case. [Filing No. 13 at 14.] The Commissioner contends Robin B. did not meet her burden of providing opinion evidence of medical equivalence under the Listings, so the ALJ did not commit a reversible error. [Filing No. 13 at 14.]

In reply, Robin B. argues that the ALJ's failure to mention or address relevant Listings warrants remand. [Filing No. 14 at 8.] She notes that the Commissioner concedes Listings 1.02

11

and 7.18 are applicable but the Commissioner then contends that any error is harmless because Robin B. could not meet the Listings' requirements.  [Filing No. 14 at 8.]  Robin B. argues that her burden did not require her to prove that she satisfied all of the requirements of a specific listing when the issue is medical equivalence.  [Filing No. 14 at 8-9.]  She asserts that she met her burden by producing evidence supporting her claim, including her "medical diagnoses, objective findings, clinical abnormalities, longitudinal treatment history, and the combination of her conditions." [Filing No. 14 at 9.]  She argues that the ALJ's analysis erroneously rejected her fibromyalgia at Step Two and failed to evaluate whether this condition—individually or in combination with other conditions—medically equaled a Listing.  [Filing No. 14 at 8-9.]  Finally, Robin B. argues that the ALJ's findings were flawed because he relied on incomplete state agency assessments that failed to consider relevant Listings or critical new evidence from multiple medical sources.  [Filing No. 14 at 10-11.]  She contends that the ALJ should have requested the opinion of a medical expert to address the lack of medical opinion considering the combination of Robin B.'s impairments at Step Three.  [Filing No. 14 at 11.]  Robin B. argues that the ALJ's unsupported determinations cannot serve as substantial evidence.  [Filing No. 14 at 8.]

At Step Three, the ALJ must determine whether a claimant's impairment or combination of impairments is severe enough to meet or medically equal the criteria of an impairment in a Listing.  20 C.F.R. § 404.1525.  To meet an impairment identified in the Listings, a claimant must establish with objective medical evidence the precise criteria specified.  *Id.*  The Court will address the relevant listings in turn.

### 1.  Listing 1.02 Major Dysfunction of Knee Joint

Robin B. asserts that the ALJ should have considered whether her left knee condition satisfied Listing 1.02.  [Filing No. 10 at 24.]  Listing 1.02 requires, among other things, an inability

to ambulate effectively.  20 C.F.R. § Pt. 404, Subpart P, Appendix 1, 1.00(B)(2)(b).  Here, the ALJ properly concluded that Robin B. did not show an inability to ambulate effectively, so her condition did not meet or medically equal the severity for a major joint dysfunction.  [Filing No. 6-2 at 29.]  Despite some record evidence supporting diagnostic requirements, observations during the hearing and in the record supported the ALJ's conclusion because Robin B. was able to fully bear weight while walking, maintain a normal gait during medical examinations, ambulate without an assistive device, walk up to a block without stopping, and experienced some functional improvement with treatment.  [Filing No. 6-10 at 24-28; Filing No. 6-11 at 59-62; Filing No. 6-11 at 74-77; Filing No. 6-12 at 32-36;  Filing No. 6-2 at 33;  Filing No. 6-2 at 80; 20 C.F.R. §§ 404.1525, 404.1526(a), (b); *see Sherlyn M. v. Saul*, 408 F. Supp. 3d 931, 939-42 (S.D. Ind. 2019) (finding substantial evidence supported ALJ's conclusion that listing was not met, citing opinion of medical expert stating that claimant "was able to fully bear her weight while walking during some examinations and also did not use any assistive devices").  The Seventh Circuit has held that an ALJ's observations "adduced at the hearing just as the testimony and evidence given before any finder of fact are all part of the case which the trier of fact decides."  *Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989).  Thus, "an ALJ does not commit an impropriety when he relies on his own observations during a hearing concerning the severity of a claimant's claim."  *Id.* (quoting *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982)).  Here, the ALJ's observation that Robin B. was able to stand, bear weight, and walk without any ambulatory aid is relevant to his determination regarding Robin B.'s ability to ambulate.  *See Sherlyn M.*, 408 F. Supp. 3d at 943.  Based on the substantial evidence in the record and at the hearing, it was not unreasonable for the ALJ to conclude Robin B. could ambulate effectively and thus, did not meet criteria for Listing 1.02.  20 C.F.R. § Pt. 404, Subpart P, Appendix 1, 1.00(B)(2)(b).

2.  *Listing 7.18: Vitamin B-12 Deficiency Anemia*

Robin B. asserts that the ALJ should have considered whether her vitamin B-12 deficiency anemia satisfied Listing 7.18.   [Filing No. 13 at 12-13.]   Listing 7.18 requires repeated complications of hematological disorders resulting in significant, documented symptoms and marked limitations in activities of daily living ("ADLs"), maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.  20 CFR § Pt. 404, Subpart P, Appendix 1, 7.00.

Here, the ALJ considered Robin B.'s peripheral neuropathy secondary to vitamin B-12 deficiency, noting decreased sensation in the bilateral feet helped by the use of Gabapentin, and complaints of numbness and tingling in the hands and feet, with no evidence of neurological deficits.  [Filing No. 6-2 at 28-29.]  He noted, "[t]he claimant had normal gait noted on physical examination and ability to exercise on a bicycle at home."  [Filing No. 6-2 at 28.]  The ALJ also considered Robin B.'s ability to perform ADLs, maintain social functioning, and concentrate, persist, or maintain pace in assessing her mental impairments for listings 12.04 and 12.06.  [Filing No. 6-2 at 29-31.]  He found moderate, but not marked, limitations in all three areas.  [Filing No. 6-2 at 29-31.]   Based on these findings, the ALJ properly found no evidence of work-related limitations lasting twelve continuous months or any greater limitations than those set forth in the RFC.  [Filing No. 6-2 at 28.]

Robin B. argues that because the ALJ did not explicitly discuss any consideration of her vitamin B-12 deficiency anemia, remand is warranted.  [Filing No. 6-2 at 28-29.]  However, the Court finds no reversible error.  At the hearing, Robin B. testified that she had bariatric surgery in 2003.  [Filing No. 6-2 at 57.]  She presented the following evidence: (1) treatment by Dr. Robert F. Manges from February to May 2015 for iron deficiency-based anemia due to chronic

malabsorption from previous bariatric surgery, [Filing No. 10 at 2-3]; and, (2) treatment with B-12 injections by Jessica Douyard, D.O. from November 2015 to May 2016, [Filing No. 10 at 4-5]. In May 2015, Dr. Manges opined that "this is a lifelong issue, she will eventually need parenteral iron again, but it might not be for a long time." [Filing No. 10 at 3-4.]  At her May 2016 follow-up, Dr. Manges recommended annual check-ups, stating he did not want her to get to the point "where she feels just as awful as before." [Filing No. 10 at 4-5.]  Dr. Manges noted that the vitamin B-12 injections provided some short-term symptom relief, but her vitamin B-12 levels remained low. [Filing No. 10 at 3-5.]  Robin B. was compliant with vitamin B-12 injections on an outpatient basis and experienced some symptom relief, but she would require annual follow-up and monitoring. [Filing No. 10 at 3-5.]  The Seventh Circuit has emphasized that "an [ALJ] may not select only the evidence that favors his ultimate conclusion.  His written decision should contain, and his ultimate determination must be based upon, all of the relevant evidence in the record." *Garfield,* 732 F.2d at 609 (citations omitted).  A written evaluation of every piece of testimony and submitted evidence is not required; however, the ALJ must articulate at some minimal level his analysis of the evidence in "cases in which considerable evidence is presented to counter the agency's position." *Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir. 1984).  Here, the Court finds that the ALJ's consideration of Robin B.'s vitamin B-12 deficiency symptoms and limitations in maintaining ADLs, social functioning, pace, persistence, and task completion were sufficient to conclude that she would not satisfy the Listing 7.18. [Filing No. 6-2 at 29-31.]  The ALJ based his findings on substantial evidence and explained his reasoning in a "manner sufficient to permit an informed review." *Garfield,* 732 F.2d at 610.

### 3. *SSR 12-2P and Medical Equivalence of Fibromyalgia*

Robin B. argues that the ALJ failed to properly consider all of the evidence related to her fibromyalgia when he concluded that it did not medically equal a listing.  [Filing No. 10 at 24-26.] To determine the medical equivalence of fibromyalgia, the ALJ must consider Robin B.'s symptoms using sufficient objective evidence from an acceptable medical source to support a finding that her impairment precludes her from performing any substantial gainful activity.  20 CFR § 404.1526.

Here, the ALJ considered records from Fayette Regional Health System and Dr. John McLimore of OrthoIndy in assessing her fibromyalgia.  [Filing No. 6-2 at 28.]  The ALJ noted that Dr. McLimore referenced diffuse tender points, observing that "he does not detail the points." [Filing No. 6-2 at 28.]  SSR 12-2P specifies there must be at least eleven positive tender points on physical examination found on both sides of the body, both above and below the waist.  *See* SSR 12-2P.  The ALJ reasonably concluded that because the record was absent of a rheumatology workup or diagnosis by a rheumatologist, the condition was not a medically determinable impairment because there was no evidence of any work-related limitations lasting twelve continuous months.  [Filing No. 6-2 at 28.]  Robin B. argues that the ALJ cannot analyze only supportive evidence and must confront evidence that does not support his conclusion; but, she does not specify any evidence that the ALJ failed to consider.  [Filing No. 10 at 24-26.]

The Court finds that substantial evidence supports the ALJ's conclusion that the functional requirement was not met or equaled, and the ALJ's written decision sufficiently articulated his rationale.  Moreover, the ALJ detailed positive responses to treatment in the record, explaining that Robin B. received B-12 injections and participated in physical therapy—both resulting in symptom improvement—and she experienced only moderate limitations with daily or functional

activities.  [Filing No. 10 at 4-5].  For these reasons, the Court concludes that the ALJ's listing conclusions were supported by substantial evidence.

### C.  Whether Substantial Evidence Supports the ALJ's RFC Assessment

Robin B. argues that the RFC is not supported by substantial evidence.  [Filing No. 10 at 26.]  First, Robin B. argues that the ALJ failed to properly accommodate all of her conditions or to consider how the combination of her conditions limited her ability to work.  [Filing No. 10 at 27.]  Second, Robin B. argues that the ALJ failed to properly weigh her treating physicians' opinions and ignored evidence without providing good reasons.  [Filing No. 10 at 30-32.]  Third, Robin B. argues that the ALJ erred by rejecting her own and third-parties' statements about the severity of her symptoms and improperly basing his credibility analysis solely on certain objective medical evidence that supported his decision while ignoring the medical opinions that did not match his views.  [Filing No. 10 at 33-34.]

In response, the Commissioner argues that substantial evidence supports the RFC.  First, the Commissioner argues that the ALJ reasonably considered the objective evidence of Robin B.'s conditions and determined that she could perform light exertional work with specific limits.  [Filing No. 13 at 15-16.]  Second, the Commissioner argues that the ALJ reasonably weighed the medical opinion evidence and gave several good reasons for relying on the physical therapist's recommendations over the treating physicians' medical opinions.  [Filing No. 13 at 19-20.]  Third, the Commissioner argues that the ALJ reasonably considered Robin B.'s subjective symptoms, aggravating factors, medications, treatment, symptom relief measures, ADLs, and functional limitations.  [Filing No. 13 at 25-28.]  The Commissioner contends that Robin B.'s medical records were consistent with the assessed RFC, and that Robin B. did not meet her burden of proving disabling functional limitations.  [Filing No. 13 at 18.]  The Commissioner also asserts that the

factual findings are conclusive because the threshold for evidentiary sufficiency is not high, the Commissioner is charged with resolving conflicts, and the Court may not decide facts anew, re-weigh evidence, or substitute its own judgment.  [Filing No. 13 at 16.]

In reply, Robin B. maintains that the RFC is not supported by substantial evidence. [Filing No. 14 at 12.]  First, she argues that the ALJ's use of selected evidence was insufficient because he did not consider important objective, clinical evidence or regulatory factors.  [Filing No. 14 at 12-13.]  Second, Robin B. argues that the RFC does not factor in her non-severe impairments, particularly related to time-off task, fatigue, and pain.  [Filing No. 14 at 13-14.]  Third, Robin B. argues that the ALJ improperly concluded that her continued part-time work and CDL license renewal suggested a considerable capacity to work, and his lack of consideration of her sister's and employer's statements violated agency regulations.  [Filing No. 14 at 16-19.]

As discussed above, the ALJ properly weighed the medical opinions.  The ALJ "minimally articulated" his reasoning behind the RFC determination to allow the appellate court to "trace the path of his reasoning."  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  Although the ALJ is not required to provide a written evaluation of every piece of evidence and testimony, the ALJ came close.  The ALJ did not disregard entire lines of evidence nor produce arbitrary determinations.  Each determination was supported by substantial evidence, and the ALJ properly weighed contradictory testimony and statements to the best of his ability by using the objective evidence available.  Because the Court is not permitted to reweigh the facts and the ALJ's RFC determination was supported by substantial evidence, Robin B.'s claim that remand is required due to the RFC analysis fails.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).

### 1. *Whether the ALJ Accommodated All of Robin B.'s Conditions*

As discussed previously in the Step Two analysis, the ALJ articulated his consideration of how Robin B.'s combined symptoms limited her ability to work.  First, the ALJ considered obesity as an "aggravating factor to any other severe impairment that in combination would meet a listing," but he found that the "medical evidence of record did not indicate her obesity contributed to any other severe impairment to meet a listing in 20 CFR 404, Subpart P, Appendix 1."  [Filing No. 6-2 at 29.]  Second, the ALJ considered Robin B.'s mental impairments, both "singly and in combination," and found that they did not meet or medically equal a listing.  [Filing No. 6-2 at 29.]  Third, the ALJ considered Robin B.'s combined symptoms when deciding whether the paragraph B and C criteria in the Steps Two and Three sequential evaluation process were satisfied.  [Filing No. 6-2 at 30-31.]  For paragraph B, the ALJ found moderate—but not marked—limitations in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and, (4) adapting and managing oneself.  [Filing No. 6-2 at 29-30.]  In considering "paragraph C" criteria, the ALJ found that the record did not reflect evidence of: (1) repeated episodes of decompensation; (2) a residual disease process indicating that minimal changes in the environment would predict decompensation; or (3) a history of one or more years of inability to function outside of a supportive living arrangement.  [Filing No. 6-2 at 30-31.]  Here, the ALJ's consideration of Robin B.'s obesity, mental impairments, and physical conditions at Step Two together with his consideration of paragraph B and C criteria in the sequential analysis satisfied his duty of minimally articulating whether the combination of Robin B'.s conditions would limit her ability to work.  The Court must uphold the ALJ's factual determinations if they are supported by substantial evidence based on the record as a whole.  *Davis,* 603 F.2d at 625.

       2. *Whether the ALJ Provided Sufficient Reasons in Weighing the Treating Physicians' Opinions*

Robin B. argues that the ALJ should have given her treating physicians' opinions that "entirely support her disability application" more weight. [Filing No. 10 at 30.] She asserts that the ALJ did not provide good reasons for not giving her treating physicians' opinions controlling weight. [Filing No. 10 at 31.] Robin B. concludes that the ALJ adopted parts of the medical reports that supported his decision and ignored multiple, consistent medical opinions that did not match his views. [Filing No. 10 at 32.]

Here, the ALJ considered all of Robin B.'s treating doctors' opinions in the context of the rest of the evidence in the case. The ALJ did not disregard the treating physicians' opinions, but simply did not assign them controlling weight due to other factors that the ALJ discussed in the opinion. Pursuant to 20 CFR 404.1527(a)(2), ALJs must "always give good reasons in [their] notice of determination or decision for the weight [they] give [a claimant's] treating source's medical opinion." Giving more weight to the opinion from a medical source who is not an "acceptable medical source" than to the opinion from a treating source does not conflict with the treating source rules in 20 CFR 404.1527(a)(2). *See* 20 CFR 404.1527(f)(1). The ALJ afforded considerable weight to physical therapist Gregory A. Frontz's December 2016 *assessment* that Robin B. could return to light exertional work because: (1) she had no difficulty walking normally; (2) she improved her strength and trunk range of motion; and (3) she increased uninterrupted periods of sitting, standing, and walking. [Filing No. 13 at 19-20.] The ALJ provided satisfactory reasons for giving more weight to Dr. David Schwartz's September 2016 restrictions (*i.e.*: no lifting over 15 pounds; no repetitive lifting, twisting, or bending; office work only) and less weight to Dr. Gregory Hellwarth (*i.e.*, temporary restrictions pending further testing) and Dr. Ryan Minnich (*i.e.*, based on subjective complaints inconsistent with treatment notes). The ALJ satisfied his

obligation of considering all of the evidence and giving good reasons for his findings.

### 3. Whether the ALJ Reasonably Considered Robin B.'s Subjective Symptoms

Robin B. argues that the ALJ erred by rejecting her subjective statements and abnormal exam findings, and that the ALJ failed to consider statements from her sister and former employer which supported additional limitations. [Filing No. 10 at 33-34.] Robin B. asserts that because the ALJ did not specifically address her third-party statements or make explicit credibility determinations, remand is warranted. [Filing No. 10 at 33-34.]

A reviewing court gives considerable deference to an ALJ's credibility assessment because the ALJ is in the best position to evaluate witness testimony, and the Court will not overturn his decision unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). An ALJ's consideration of a claimant's allegations, widely known as credibility analysis, is still required; however, as clarified by SSR 16-3P (applicable as of March 28, 2016), the focus is not on the claimant's propensity for truthfulness or character, but rather on the consistency of statements about symptoms with the relevant evidence. *M.S. v. Berryhill*, 2018 WL 4140612, *3 (S.D. Ind. Aug. 30, 2018) (comparing SSR 96-7P with SSR 16-3P); SSR 16-3P, 2017 WL 5180304 at *2, *6, *11.

Here, the ALJ assessed aggravating factors based on Robin B.'s and her sister's third-party function reports (*i.e.*, difficulty in crowds and interacting with strangers). [Filing No. 6-2 at 30.] The ALJ also discussed and accepted Robin B.'s employer statement as evidence in determining that Robin B. was unable to perform any past relevant work (*i.e.*, she no longer drove buses full-time and was assigned an aide to assist with managing children on the bus). [Filing No. 6-2 at 37.] Because the RFC accommodated Robin B.'s physical and psychological limitations based on her sister's and employer's subjective reports, the Court agrees with the Commissioner that the ALJ

did not err by not giving the subjective reports greater weight. The ALJ used the proper legal framework, and the record as a whole supported the RFC.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 271 (7th Cir. 2010). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Id.* (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet*, 364 F. App'x at 274. Taken together, the Court can find no legal basis presented by Robin B. to reverse the ALJ's decision that she was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

Date: 8/17/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**